MEMORANDUM DECISION AND JUDGMENT ENTRY
This cause came on to be considered upon a notice of appeal, the transcript of the docket and journal entries, the transcript of proceedings and original papers from the Butler County Court of Common Pleas, Domestic Relations Division, and upon the briefs and oral arguments of counsel. Now, therefore, the assignments of error having been fully considered are passed upon in conformity with App.R. 12(A) as follows:
Defendant-appellant, Jill K. Childs, appeals a ruling in favor of plaintiff-appellee, Dan B. Childs, as to the distribution of marital property. This is the second appeal involving this property division.
The parties were married on September 5, 1981. On January 12, 1994, appellee filed for divorce in the Butler County Court of Common Pleas, Domestic Relations Division. The trial court held a hearing on July 19, 1994, to consider support issues and the division of marital property. That trial court filed a decision on July 21, 1994, and both parties appealed.
On appeal, this court affirmed the trial court's decision to impute $45,000 of income to appellee, but remanded the cause because the trial court failed to address several assets and accounts identified at the hearing. Childs v. Childs (Mar. 11, 1996), Butler App. No. CA95-03-050, unreported. Specifically, the trial court did not address a $48,815 severance package appellee received from his former employer. At the time of the hearing, appellee had yet to receive $21,553 in severance benefits. The trial court also did not address several cash accounts, or a $1,096 stock ownership plan. Additionally, the trial court awarded each party the vehicle in his or her possession without considering the significant difference in the net values of the vehicles.
On remand, the trial court did not consider any additional evidence concerning the assets it had previously failed to address. Instead, the trial court ordered the parties to submit memoranda outlining their arguments. The trial court also ordered the parties to address appellee's claim for reimbursement of real estate taxes he paid after the sale of the parties' home. On June 3, 1996, the trial court indicated that it was ruling in appellee's favor and ordered appellee to prepare findings of fact consistent with his memorandum. The trial court adopted appellee's findings of fact and filed an amended judgment entry and divorce decree on July 24, 1996.
The trial court accepted appellee's assertion that all the funds from the severance package and from his cash accounts were consumed by expenditures on behalf of appellant and the parties' two children. As for the stock ownership plan, the court adopted appellee's claim that "these monies were the result of a contribution made by Champion [appellee's former employer] on January 1, 1977, plus the accumulated interest, and therefore a premarital asset belonging entirely to Dan B. Child [sic]." The trial court also accepted appellee's contention that any difference in the net values of the parties' vehicles was offset by appellant's cash accounts and "further by the fact that 100% of the parties' obligations were paid by Dan Childs, while Jill Childs voluntarily chose not to work." Finally, the trial court adopted appellee's argument that $2,950 in real estate taxes paid at the closing on the sale of the marital home was a joint debt. The trial court ordered appellant to pay appellee one half of that sum.
In this second appeal, appellant again complains that the trial court inequitably divided the parties' marital property. In her first assignment of error, appellant challenges the trial court's finding that no funds remained from the severance package for distribution as a marital asset. In her second assignment of error, appellant argues that the trial court failed to equitably divide the stock plan, cash accounts, and the parties' equity in their vehicles. Under her third assignment of error, appellant argues that the trial court abused its discretion in ordering her to pay half of the real estate taxes due after the sale of the parties' home. All three assignments of error relate to the division of property, and this court will consider all three assignments of error together.
Unfortunately, this court cannot rely on the trial court's adopted findings of fact. Not surprisingly, the adopted findings drafted by appellee's attorney are heavily biased in favor of appellee. More disturbing, however, is that the findings are not supported by evidence in the record. At least one of the adopted findings is specifically contradicted by appellee's own testimony at the July 1994 hearing. This court can only conclude that the trial court ignored its responsibility to properly review the record before adopting appellee's "findings of fact." Since the trial court failed to properly consider the issues or the record on remand, this court is reluctant to remand this case again. Therefore, in accordance with App.R. 12(C), this court will weigh the evidence in the record and render the judgment that the trial court should have rendered on that evidence.
On remand, the trial court accepted appellee's contention that the stock ownership plan through appellee's former employer, Champion, was his premarital property. That contention, however, is directly contradicted by the evidence in the record. Appellee unequivocally testified at the July 1994 hearing that the stock plan was acquired during the marriage and was marital property. (T.p. 16.) The "finding" that the stock plan was a premarital asset is therefore against the manifest weight of the evidence. The stock plan was valued at $1,096 in February 1994.
On remand, the trial court accepted appellee's contention that his cash accounts were consumed by expenditures on behalf of appellant and the parties' children. There is no support for this proposition in the record. In July 1994, appellee had about $10,992 in savings and checking accounts; $5,000 of this sum belonged to the children. Appellant had about $1,958 in her own accounts at that time. Taking into account the $5,000 belonging to the children, appellee had about $4,034 more in cash accounts than appellant.
On remand, the trial court adopted appellee's claim "that any difference in the net values between the parties' vehicles is offset by the additional monies that Jill Childs had available to her in cash accounts, and further by the fact that 100% of the parties' obligations were paid by Dan Childs, while Jill Childs voluntarily chose not to work." As noted above, appellee had significantly more money in cash accounts than appellant. The finding that the net difference in the value of the vehicles was offset by appellant's cash accounts is therefore against the manifest weight of the evidence. There is also insufficient evidence in the record to support a finding that appellant "voluntarily chose not to work." Although the trial court originally found that "[t]he equity [in the vehicles] is comparable according to the testimony[,]" appellee testified he had $2,259 more in equity in his vehicle than appellant had in hers. In light of the parties' liquid assets, there was no reason for the trial court not to consider the differences in equity between the parties' vehicles.
On remand, the trial court ordered appellant to pay one half of the real estate taxes due after the sale of the parties' home. During past proceedings, however, the trial court had consistently held that appellee was responsible for the real estate taxes on the marital residence. Only after this court remanded the case did the trial court change its position on the treatment of real estate taxes. There is no explanation for this change of position in the record. Under the circumstances, this court concludes that the trial court abused its discretion in ordering appellee to pay one half of the remaining real estate taxes.
On remand, the trial court accepted appellee's contention that he spent all of the proceeds from the $48,815 severance package for the benefit of appellant and the children. There is little question that appellee applied funds from the severance package to the parties' joint expenses. The record, however, does not support a finding that all of the funds from the severance package were expended on behalf of appellant and the children.
This court cannot accurately trace the disposition of severance benefits from the existing record. There are equitable considerations, however, against treating the severance benefits solely as income to be applied against expenses. Appellee had worked for Champion since 1970. Champion forced appellee to resign in January 1994 after the company discovered that he was having an affair with a co-worker. In 1993, appellee earned $73,789. In 1992, he earned $76,869. In exchange for appellee's resignation, Champion agreed to provide him with the severance package at issue. Appellee was apparently unemployed throughout the divorce proceedings and received unemployment compensation through July 1994.[1]
Appellant argues that this court should divide the total value of the severance package equally between the parties. There is no question, however, that appellee paid joint expenses with proceeds from the severance package pending the divorce. There is also no evidence that appellee was living extravagantly or hiding the money he received from the severance package. Thus, as of July 19, 1994, there was no evidence that appellee had misused or dissipated marital assets.
After careful consideration, however, this court concludes that the $21,553 in severance benefits yet to be paid at the time of the July 1994 hearing should be considered a marital asset to be divided equally between the parties. Appellee may complain that distribution of that sum is inequitable because he continued to pay joint expenses after the July 21 decision. For example, although appellee moved out of the marital residence in February 1994, he was responsible for all the mortgage payments on the residence through the end of 1994.[2] Appellee was also responsible for all real estate taxes and insurance premiums on the marital residence until that home finally sold. Appellee also paid certain household bills and gave appellant $500 each month from the separation in February until November 1994.[3]
Appellee was also responsible for $500 monthly health insurance premiums starting in August 1994 (Champion paid the health insurance premiums through July 1994).
However, even though appellee probably continued to use proceeds from the severance package to pay joint expenses after the trial court's July 21, 1994 decision, the trial court should have divided forthcoming severance benefits as a marital asset. This court previously affirmed the trial court's decision imputing $45,000 of income per year to appellee.[4] The trial court also never considered the fact that appellee received unemployment compensation through July 1994. In short, appellee had the resources and the ability to provide for the parties' expenses notwithstanding the severance benefits yet to be paid when the trial court held its evidentiary hearing in July 1994. Moreover, appellee was solely responsible for losing his high-paying job.
In summary, the trial court's analysis of the parties' property division was inadequate, and its adopted findings of fact are against the manifest weight of the evidence. This court concludes that appellant is entitled to a total award of $14,473 to account for marital assets the trial court either failed to address or improperly addressed. This redistributive award consists of one half the value of the Champion stock plan ($548), one half of the difference in the parties' cash accounts as of July 1994 ($2,018), one half of the greater equity appellee received in the division of the parties' automobiles ($1,130), and one half of the proceeds from the severance benefits remaining in July 1994 ($10,777). Appellee is solely responsible for the real estate taxes due after the sale of the parties' property, and the trial court's order that appellant pay appellee $1,475 is vacated. Appellee shall pay appellant $14,473 within sixty days of journalization of the judgment entry herein.
The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that be, and the same hereby is, reversed. The judgment or final order herein appealed from is amended to reflect that appellee shall pay appellant $14,473 within sixty days, and that the trial court's previous order that appellant pay appellee $1,475 is vacated.
It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Memorandum Decision and Judgment Entry shall constitute the mandate pursuant to App.R. 27.
Costs to be taxed in compliance with App.R. 24.
YOUNG, P.J., KOEHLER and WALSH, JJ., concur.
[1] In July 1994, appellant was a full-time student and had no earned income so far that year. She earned $13,280 in 1993 and $7,069 in 1992.
[2] Appellee made all of the $1,117 monthly mortgage payments on the marital residence between the February 1994 separation and the end of that year, about $12,287. The trial court ordered appellant to make $500 of the monthly payments starting in January 1995, that amount to increase by $50 every two months.
[3] At a hearing on January 18, 1995, the trial court held November 15, 1994, as the effective date for commencement of support payments, and appellee was to begin payments through the Butler County Child Support Enforcement Agency at that time.
[4] Appellee testified at the July 1994 hearing that he received a job offer with a starting salary of $45,000 a year, but that the offer was withdrawn during further negotiations.